UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL V.,

                            Plaintiff,

v.                                                                    6:18-CV-0481
                                                                                (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

MICHAEL V.
  *Pro Se*
225 Herkimer Road, #B33
Utica, New York 13502

SOCIAL SECURITY ADMINISTRATION          PRASHANT TAMASKAR, ESQ.
OFFICE OF GENERAL COUNSEL–REGION II    Special Assistant U.S. Attorney
  Counsel for the Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this action filed by Michael V. ("Plaintiff") against the

Commissioner of Social Security ("Defendant" or "Commissioner") pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), is Defendant's motion for judgment on the pleadings pursuant to Fed. R.

Civ. P. 12(c). (Dkt. No. 22.) For the reasons set forth below, Defendant's motion for judgment

on the pleadings is granted. The Commissioner's decision denying Plaintiff disability benefits is

affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1969, making him 43 years old on the alleged onset date, 45 years old on the application filing date, and 48 years old on the date of the Administrative Law Judge's ("ALJ") decision. Plaintiff reported having at least a high school education and two paralegal degrees. Plaintiff had past work as a production manager, machine operator, bottle inspector, and roof helper. In his application, Plaintiff alleged disability due to a right ankle fusion, right knee arthritis, anxiety, depression, and left shoulder impairment.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on May 18, 2015, alleging a disability beginning May 30, 2012. Plaintiff's application was initially denied on September 28, 2015, after which he requested a hearing before an ALJ. Plaintiff appeared at a video hearing on April 11, 2017, in Utica, New York, before ALJ Lisa B. Martin, who presided over the hearing from Alexandria, Virginia. On September 19, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 11-21.) On February 23, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-5.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following ten findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found that Plaintiff was insured for benefits under the Social Security Act until December 31, 2016. (T. 13.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (*Id.*) Third, the ALJ

found that Plaintiff's right ankle disorder with surgical correction and fusion, left shoulder disorder status-post surgical correction, lumbar spine disorder, depression, and anxiety are severe impairments. (*Id*.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 14-15.) Specifically, the ALJ considered Listings 1.00 (musculoskeletal system disorders), 12.00 (adult mental disorders), 12.04 (affective disorders), and 12.06 (anxiety-related disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except . . . [t]he claimant needs a position change opportunity as often as every 30 minutes for 1-2 minutes, is limited to 4 hours of standing and walking, the rest sitting without limit, in an 8 hour work day, cannot perform any ladders, ropes, or scaffolds climbing or crawling tasks, and is limited to occasional postural motions otherwise. He is limited to frequent, but not constant, upper left extremity reaching and handling tasks, and must not be exposed to any dangerous work hazards (unprotected heights and exposed moving machinery). He is limited to detailed, but not complex, work tasks not requiring a fast assembly quota pace, and limiting the claimant to occasional work interactions with coworkers, supervisors, and the public.

(T. 15-19.) Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 19.) Seventh, the ALJ found that Plaintiff was born in 1969, and was 43 years old, which is defined as a younger individual (between ages 18 and 49), on the alleged disability onset date. (*Id.*) Eighth, the ALJ found that Plaintiff has at least a high school education and is able to communicate in English. (*Id.*) Ninth, the ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Guidelines as a framework supports a finding that the claimant is "not disabled," whether or not Plaintiff has

3

transferable job skills. (*Id.*) Tenth, the ALJ found that, considering Plaintiff's age, education, work experience and residual function capacity, there are jobs that exist in significant numbers in the national economy that he can perform, in particular plastic hospital product assembler and inspector/hand packager. (T. 19-20.) The ALJ therefore concluded that Plaintiff is not disabled. (T. 20.)

### D. Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes four arguments in support of his motion for judgment on the pleadings. (Dkt. No. 22, at 14-27 [Def.'s Mem. of Law].)

First, Defendant argues that Plaintiff's impairments were not of listing-level severity pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 16-19.) More specifically, Defendant argues that Plaintiff's physical impairments do not meet the 1.00 (Musculoskeletal) Listings in the following respects: (a) with regard to Plaintiff's right ankle fracture, the evidence showed that he could ambulate effectively, (b) with regard to Plaintiff's left shoulder impairment, the Listing 1.02B requires impairment of both upper extremities, not just one, as is the case here, and (c) with regard to Plaintiff's lumbar spine impairment, Listing 1.04 requires imaging that shows effect on a nerve root, which was not present here. (*Id.*) In addition, Defendant argues that, with regard to Plaintiff's depression and anxiety, Plaintiff did not "have at least marked restriction in any 'paragraph B' criteria" because the ALJ found that Plaintiff had only a mild limitation in understanding, remembering, or applying information, only a moderate limitation with regard to concentrating, persisting, or maintaining pace, and only a mild limitation with regard to adapting or managing himself. (*Id.*) Moreover, Plaintiff did not meet the "Paragraph C" criteria because his functional independence and the conservative treatment he has received

do not suggest marginal adjustment abilities. (*Id.*)

Second, Defendant argues that the RFC finding is supported by substantial evidence. (*Id.* at 20-25.) More specifically, Defendant argues that the ALJ appropriately considered and gave great weight to consultative examiner Elke Lorensen, M.D.'s assessment, which provided the only physical assessment in Plaintiff's file. (*Id.*) Defendant argues that Dr. Lorensen's clinical findings, objective findings, the degree of Plaintiff's treatment, Plaintiff's reported activities, and Dr. Lorensen's opinion that Plaintiff had "moderate restrictions standing and ambulating, presumably secondary to right ankle pain" and "moderate restrictions . . . lifting," are reasonably accounted for in the light RFC because (a) it limited Plaintiff to only four hours of standing and walking and allowed him to change positions every thirty minutes, (b) the lifting and carrying requirements of light work are reasonably consistent with the moderate lifting restrictions, (c) it limited Plaintiff to occasional postural motions and prohibited any ladders, ropes, or scaffolds climbing or crawling tasks, (d) it limited Plaintiff to frequent but not constant left upper extremity reaching and handling tasks, and (e) it restricted Plaintiff from exposure to dangerous work hazards. (*Id.*) Moreover, Defendant argues that the RFC restriction to "detailed, but not complex, work tasks not requiring a fast assembly quota pace" based on Plaintiff's depression, anxiety, pain, and medication side effects, is consistent with Plaintiff's reported daily activities and the medical opinions of consultative examiner Jacqueline Santoro, Ph.D., and state agency medical consultant S. Juriga, Ph.D. (*Id.*) Finally, Defendant argues that the RFC limitation to occasional work interactions with the public, co-workers, and supervisors is consistent with Dr. Santoro's assessment that "[m]oderate difficulties were noted in relating adequately with others," and with Dr. Juriga's assessment that Plaintiff could do "low contact work" with moderate

5

limitations in social function. (*Id.*)

Third, Defendant argues that substantial evidence supports the ALJ's Step Five finding. (*Id.* at 25-26.) More specifically, Defendant argues that the vocational expert's testimony was based on a hypothetical question matching Plaintiff's vocational factors and the ALJ's RFC finding. (*Id.*) In addition, Defendant argues that, although the ALJ misstated the vocational expert's testimony as to the number of jobs in the national economy, this does not warrant remand because the ALJ would nevertheless have found that the numbers actually given by the vocational expert constituted a significant number of jobs. (*Id.*)

Fourth, Defendant argues that the ALJ properly developed the record and rendered a determination on Plaintiff's case. (*Id.* at 26-27.) During the hearing, Plaintiff did not report missing any records and stated he was continuing to treat at the Syracuse VA Hospital; after the hearing, the ALJ obtained updated Syracuse VA records, which covered treatment through May 2017. (*Id.*) As a result, the ALJ had adequate evidence to make a determination as to disability. (*Id.*)

To date, Plaintiff has not filed a brief in this matter.[1]

## II.   APPLICABLE LEGAL STANDARDS

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d

---

[1] The Court notes that Plaintiff's brief was due on January 11, 2019. (Text Notice dated Nov. 27, 2018.) In light of Plaintiff's *pro se* status, the Court granted Plaintiff one last opportunity to file a brief no later than June 21, 2019, and specifically informed Plaintiff that failure to file a brief by that date would result in a decision on his appeal without further delay. (Dkt. No. 23 [Text Order filed May 17, 2019].)

856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the

7

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

8

## III. ANALYSIS

### A. Whether the ALJ's Decision That Plaintiff's Impairments Did Not Meet or Equal a Listing Is Supported by Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22, at 16-19 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.[2]

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (Mordue, C.J.) (citing *Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 [W.D.N.Y. 2006]). "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525[d]). "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 [1990]). Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Rockwood*, 614 F. Supp. 2d at 273 (citing *Berry v. Schweiker*, 675 F.2d 464, 468 [2d Cir. 1982]).

For the reasons set forth in Defendant's memorandum of law, the ALJ's decision that

---

[2] On January 18, 2017, the Social Security Administration ("SSA") published a final rule that changed the protocol for evaluating medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416). Those new regulations apply only to claims filed with the SSA on or after March 27, 2017. Because Plaintiff's claim was filed prior to that date, to the extent that the regulations are cited, the Court refers to versions of the regulations that were in effect prior to March 27, 2017.

Plaintiff's impairments were not of listing-level severity, is supported by substantial evidence and is free of material legal error. (Dkt. No. 22, at 16-19.)

   B.   **Whether the ALJ's RFC Determination Is Supported by Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22, at 20-25 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

In general, the plaintiff bears the burden of showing a disability. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) ("As a general matter, '[t]he claimant bears the burden of proving that she suffers from a disability.'") (quoting *Swainbank v. Astrue*, 356 F. App'x. 545, 547 [2d Cir. 2009)]).

In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) (D'Agostino, J.) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

In general, "the weight assigned to a nonexamining source's opinions 'depends on the

degree to which they provide supporting explanations for their opinions.'" *Nieves v. Astrue*, 08-CV-0311, 2009 WL 2601237, at *4 (N.D.N.Y. Aug 20, 2009) (Sharpe, J.) (quoting 20 C.F.R. § 416.927[d][3]); *see also Henry v. Astrue*, 32 F. Supp. 3d 170, 187-88 (N.D.N.Y. 2012) (Kahn, J.) (finding that the ALJ's consideration of the treatment evidence, along with the State Agency medical consultant's opinion, amounted to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

The RFC's physical limitations are supported by the medical opinion of Dr. Lorensen, medical records, and Plaintiff's reports that, *inter alia,* he (a) could ambulate without an assistive device, (b) regularly exercised on an elliptical machine, and (c) engaged in other activities like dressing, bathing, cooking, mopping, doing laundry, making the bed, cleaning, dusting, and caring for his wife.[3] Similarly, the opinions of Dr. Santoro and Dr. Juriga, medical records, and Plaintiff's reported activities (including caring for his wife; attending college as a full-time student and obtaining an Associate's degree; looking for work; traveling independently; regularly going to the library, church, and the grocery store; making meals; cleaning; managing finances; and regularly exercising) support the ALJ's RFC restriction to "detailed, but not complex, work tasks not requiring a fast assembly quota pace." Moreover, the RFC limitation to occasional

---

[3] Courts have held that "moderate" lifting or carrying limitations are consistent with RFC limitations to light work. *See Gurney v. Colvin*, 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding no error in an RFC for light work where a source opined moderate limitations in the abilities to perform repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying) (collecting cases making similar findings); *James v. Astrue*, 09-CV-0424, 2010 WL 5536338, at *6 (N.D.N.Y. May 7, 2010) (Bianchini, M.J.) (finding the ALJ's conclusion that plaintiff could lift 20 pounds occasionally and 10 pounds frequently was inconsistent with the consultative examiner's "moderate-to-severe" limitation in lifting and carrying, noting however that a moderate limitation "would not necessarily be incompatible with the ability to perform light work").

work interactions with the public, co-workers, and supervisors is consistent with the medical opinion of Dr. Santoro and Dr. Juriga, the medical records, and Plaintiff's self reports that he regularly went to the library, church, and the grocery store.

The ALJ appropriately gave great weight to the opinions of Dr. Lorensen, Dr. Santoro, and Dr. Juriga. (T. 17-18.) The ALJ noted that Dr. Lorensen's opinion "is supported by the nature and degree of his clinical findings, and is consistent with other objective findings of record, the nature and degree of [Plaintiff's] treatment, and [Plaintiff's] reported daily activities." (T. 17.) Moreover, the ALJ determined that Dr. Santoro's opinion "is supported by the nature of her clinical findings, [Plaintiff's] reported symptoms, and the nature and degree of his treatment." (T. 18.) Finally, the ALJ noted that the opinion of Dr. Juriga "is consistent with the nature of [Plaintiff's] reported anxiety and panic attacks, his treatment, and the objective findings of record." (T. 18.)

The ALJ also evaluated Plaintiff's symptoms and found that his statements concerning the intensity, persistence, and limiting effects of those reported symptoms were not entirely consistent with the medical and other evidence, citing specifically to the reasons why Plaintiff ceased working, his ability to obtain two paralegal degrees since the accident that precipitated his alleged disability, his other daily activities, the objective medical evidence, and his treatment history. (T. 16-18.)[4] The Court finds that this analysis is sufficient to satisfy the regulatory

---

[4] In determining whether a claimant is disabled, the ALJ must make an evaluation of the plaintiff's symptoms under the guidance of SSR 16-3p, and must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013). However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Cichocki*, 534 F. App'x at 76.; *see also Del Carmen Fernandez v. Berryhill*, 18-CV-0326, 2019 WL 667743, at

standards and is supported by substantial evidence.

For all of the above reasons, the Court finds that the ALJ's RFC finding, based on her weighing of the opinion and other evidence, is consistent with the applicable legal standards and supported by substantial evidence. Remand is therefore not warranted on this basis.

**C.     Whether the ALJ's Step Five Finding Is Supported by Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22, at 25-26 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Although a claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 [2d Cir. 2012]).

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 [2d Cir. 1983], and citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 [2d Cir. 1981]).

"The 'proper use of vocational testimony presupposes both an accurate assessment of the

---

*11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 [S.D.N.Y. 2018]). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 [2d Cir. 1983]).

13

claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (quoting *Lugo v. Chater*, 932 F. Supp. 497, 503 [S.D.N.Y. 1996]). There also "must be 'substantial evidence to support the assumption upon which the vocational expert based his opinion.'" *Pardee*, 631 F. Supp. 2d at 212 (quoting *Dumas*, 712 F.2d at 1554). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-944S, 1996 WL 1015417, at *8 [W.D.N.Y. Nov. 14, 1996]).

Here, the vocational expert, Jeanne Veal, testified that, given Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (T. 52-53.) However the ALJ misstated Ms. Veal's testimony as to the number of jobs in the national economy.[5]

"'Courts have generally held that what constitutes a 'significant number' is fairly minimal.'" *Rosa v. Colvin*, 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) (Kahn, J.) (quoting *Fox v. Comm'r of Soc. Sec.,* 02-CV-1160, 2009 WL 367628, at *3 [N.D.N.Y. Feb. 13, 2009] [Scullin, J.]); *see also Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015) (Suddaby, J.) (collecting cases in which the specific number of

---

[5] Ms. Veal testified that there would be approximately 59,000 jobs in the economy as a plastic hospital assembler and 84,400 jobs in th economy as an inspector/hand packager due to the RFC's restriction limiting Plaintiff to no more than four hours of combined standing and walking. (*Compare* T. 20, *with* T. 52-53.)

occupations in the regional and national economy provided by the vocational experts were or were not held to be a 'significant number').

Because the 143,000 total representative jobs existing in the national economy that Ms. Veal testified would be available to Plaintiff constitutes a significant number of jobs, the Court finds that the ALJ's misstatement of Ms. Veal's testimony regarding the number of jobs in the national economy was harmless error.[6] Additionally, because the Court finds no other error in the ALJ's Step Five determination, there is no basis for remand.

The Court therefore finds that the Step Five finding is supported by substantial evidence, and remand is not warranted on this basis.

### D. Whether the ALJ Properly Developed the Record and Rendered a Determination on Plaintiff's Case

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 22, at 26-27 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"When a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are 'heightened,'" such that "[t]he ALJ must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered' and by 'scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant

---

[6] *See Thompson v. Comm'r of Soc. Sec.*, 10-CV-1085, 2011 WL 5080239, at *13 (N.D.N.Y. Aug. 18, 2011) (Baxter, M.J.) (noting that the harmless error standard is applied to Social Security actions in appropriate circumstances) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 [2d Cir. 1987]; *Jones v. Barnhart*, 02-CV-0791, 2003 WL 941722, at *10 [S.D.N.Y. Mar. 7, 2003]; *Seltzer v. Comm'r of Soc. Sec.*, 07-CV-0235, 2007 WL 4561120, at *10 [S.D.N.Y. Sept. 26, 1995]).

facts.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 [2d Cir. 1990]). "And when a claimant appears *pro se* and is otherwise impaired, we must 'make a searching investigation of the record to make certain that the claimant's rights have been adequately protected.'" *Moran*, 569 F.3d at 112.

Plaintiff testified that he was continuing to receive all his medical treatment through the VA hospital. (T. 32-33.) After the hearing, the ALJ obtained updated VA medical records that covered treatment through May 2017. (T. 768.) The ALJ also obtained consultative examinations and opinions, and there is no indication that any relevant evidence was not introduced into the record. As a result, the Court finds that the ALJ properly developed the record.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 10, 2019
Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge